NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0146n.06

No. 23-5736

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRET WEHRLY, | ) | |
| Plaintiff - Appellant, | ) ) | **FILED**<br>Mar 27, 2024<br>KELLY L. STEPHENS, Clerk |
| | ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| ALLSTATE INSURANCE COMPANY, | ) ) | |
| Defendant - Appellee. | ) ) | OPINION |

Before: BOGGS, McKEAGUE, and LARSEN, Circuit Judges.

BOGGS, Circuit Judge. In this employment-discrimination case, appellant, Bret Wehrly, filed a wrongful-termination suit claiming 1) religious discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Kentucky Civil Rights Act, KRS 344.010 *et seq.* ("KCRA"); 2) a religiously hostile workplace environment, in violation of Title VII and the KCRA; and 3) retaliation, in violation of Title VII and the KCRA. The district court granted the motion of Wehrly's employer, Allstate Insurance Company, to dismiss Wehrly's claims of religious discrimination, a hostile work environment, and certain time-barred retaliation claims, and subsequently granted Allstate's motion for summary judgment on Wehrly's remaining retaliation claims. Wehrly timely appealed both judgments. For the reasons set forth below, we affirm the district court.

## I.      Factual Background

Wehrly, a Field Sales Leader ("FSL"), was employed by Allstate from 1984 until May 2018, when he was terminated for poor performance reviews and failure to meet performance goals. On March 3, 2015, Allstate published a video on a company blog entitled "Love Has No Labels." Wehrly made multiple comments on the blog, the majority of which quoted Biblical scripture and discussed God, Jesus, and their ideas of love. On June 10, 2015, Allstate made a blog post entitled "Allstate starts movement to join hands in support of LGBT message." Wehrly again made multiple comments, including "It is clear . . . that the Bible condemns homosexuality as an immoral and unnatural sin . . . Leviticus 18:22 identifies homosexual sex as an abomination, a detestable sin."

Wehrly alleges that shortly thereafter his boss, Territorial Sales Leader (TSL) Eric Harvey, contacted him at the request of Allstate management to ensure Wehrly did not post further comments on the blog. He also alleges that in a November 2015 meeting, Harvey warned Wehrly that his leadership skills would be marked insufficient[1] in his 2015 final performance review "because of [his] blog post on the LGBT website." According to Wehrly, Harvey also told him "not to make waves" and to "stay off blogs and that kind of thing." The complaint does not allege that Harvey mentioned Wehrly's religion or religious views during this meeting and or that anyone else from Allstate ever mentioned the blog comments or his religious beliefs during his employment.

---

[1] Allstate rates job performance in four categories: "better than expected performance," "expected performance," "insufficient performance," and "unacceptable." The parties sometimes use the term "inconsistent instead of "insufficient." To avoid confusion, we use the term "insufficient" as that label is used more frequently in the complaint.

When Wehrly received his 2015 annual performance review in February 2016, he learned that Allstate had rated his performance "insufficient" in most of the leadership categories and in overall business goals. The review stated that Wehrly could be defensive and unapproachable.[2] Wehrly's overall business ranking for 2015 was 18 of 26 among regional peers. In March and April 2016, Wehrly sent emails complaining that he disagreed with the 2015 performance rating and that he was being persecuted for his outspoken religious beliefs.

In May 2016, during a regional marketing meeting, Wehrly and several other employees had a loud disagreement and Wehrly was escorted to his car. Organizers of the meeting filed a workplace violence complaint against Wehrly, which resulted in a one-month suspension with pay while human resources investigated the incident. In June, Wehrly was reinstated, but received an "unacceptable behavior notification" letter for "acting inappropriately" and making statements that "caused all of the leaders in the room to be concerned about the physical meeting environment and their safety." Allstate stated that Wehrly's words, tone, and body language were "beyond unacceptable," and that "[u]nprofessional behavior, such as making inappropriate and/or unprofessional comments, or engaging in intimidating behaviors, or refusing to follow management direction in the course of [his] job responsibilities with Allstate will not be tolerated." Wehrly disputed that he ever conducted himself in an unprofessional manner and again reiterated that he believed the primary motivations of all involved were discriminatory.

---

[2] Similar ratings and comments were made in his 2013 and 2014 final performance reviews—he "can become overly emotional" and "defensive." In 2013, Wehrly received "insufficient" ratings in overall business goals, overall success factors, and overall performance. Wehrly filed a complaint alleging that Harvey had threatened him, was age biased, intentionally appointed poor agents in Wehrly's market, and failed to provide recruiting support. His complaint was investigated and dismissed. In 2014, Wehrly received an overall "expected" performance rating, but his ability to "act like an owner" and "focus on customers" received insufficient ratings.

In February 2017, a regional human-resources manager and Wehrly's new supervisor, TSL Dallas Owen, informed Wehrly that his 2016 performance evaluation had been rated "unacceptable" in multiple performance areas. Wehrly also received a "60-Day Letter" requiring him, in order to avoid termination, to meet certain performance goals by April, which he did. In October 2017, Wehrly asked TSL Owen for a hearing to address his harassment and retaliation claims, but his request was apparently denied. In February 2018, Wehrly received his 2017 performance evaluation, which gave him an "insufficient" rating for both leadership skills and overall performance. For the next few months, Wehrly continued to fail to meet his performance target goals and Allstate fired him in May 2018.

## II.     Procedural History

Wehrly filed suit against Allstate claiming: (1) religious discrimination under Title VII and the KCRA, (2) a religiously hostile workplace environment, in violation of Title VII and the KCRA, and (3) retaliation, in violation of Title VII and the KCRA. Allstate filed a partial motion to dismiss aimed primarily at counts (1) and (2), which the district court granted ("dismissal opinion"). The court held that Wehrly failed to allege sufficient facts that Allstate had discriminated against him because of his Christian faith and failed to allege any discriminatory harassment on the basis of his religion or that his workplace was permeated with such behavior. The court also dismissed a portion of his count (3) Title VII and KCRA retaliation claims as time barred. After discovery, Allstate filed for summary judgment on Wehrly's two remaining claims—Title VII retaliation claims for acts that occurred on or after December 14, 2017, and KCRA retaliation claims for acts that occurred on or after May 19, 2016. On July 18, 2023, the

district court granted Allstate's motion for summary judgment ("second opinion"). Wehrly timely filed this appeal, challenging both district court opinions and orders.

## III.    Discussion

Wehrly makes two arguments on appeal: 1) that the district court erred in dismissing his hostile-work-environment claims because it wrongly excluded certain evidence as time barred under Title VII and the KCRA, and 2) that he had submitted sufficient evidence that his retaliation claim should have been submitted to a jury and not decided on summary judgment.

### A.    Motion to Dismiss

We review a district court's decision to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) *de novo. Linden v. City of Southfield*, 75 F.4th 597, 601 (6th Cir. 2023). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid. Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574, U.S. 10, 12 (2014). "We must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). But that tenet is inapplicable to legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### 1.    Claim of Religious Discrimination

To succeed on a Title VII religious-discrimination claim, an employee must allege sufficient facts to allow a court to draw a reasonable inference that the employer discriminated against an employee with respect to his compensation, terms, conditions, or privileges of employment, *because of* his religion. *Iqbal*, 556 U.S. at 678–79; 42 U.S.C. § 2000e-2(a)(1). To show that termination was because of his religion, the plaintiff "must show that it was the *religious* aspect of [his] [conduct] that motivated [his] employer's actions." *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (second alteration in original) (quoting *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 627 (6th Cir. 2000)).

The district court dismissed Wehrly's religious-discrimination claim on the ground that he failed to meet the plausibility standard that would allow the court to draw a reasonable inference that Allstate discriminated against him because of his religion. On appeal, Wehrly does not challenge the district court's dismissal of his religious-discrimination claim for failure to state a claim. "[I]ssues not raised in appellate briefs are deemed waived." *United States v. Archibald*, 589 F.3d 289, 298 n.7 (6th Cir. 2009). By failing to challenge the dismissal of his religious-discrimination claim, Wehrly has waived this claim on appeal. *White Oak Prop. Dev., LLC v. Washington Township*, 606 F.3d 842, 854 (6th Cir. 2010).

### 2.    Claim of Hostile Work Environment

To bring a cause of action under Title VII for a hostile work environment, Wehrly must show that: 1) he was a member of a protected class; 2) he was subjected to unwelcome harassment; 3) that harassment was based on his protected-class status; (4) the harassment created a hostile work environment; and (5) employer liability. *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th

Cir. 2021). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quotation omitted). We must consider the totality of the circumstances and look at the frequency and severity of the discriminatory conduct; "whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Ibid.* (cleaned up). The conduct must be so severe or pervasive that it "alters the conditions of the victim's employment" and creates "an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)

The district court held that Wehrly's allegations were insufficient to meet his pleading burden, as he failed to allege *any* discriminatory harassment on the basis of his religion. According to Wehrly's complaint, his comments on Allstate's LGBT blog post were allowed to stay up, and Allstate never took any specific, overt disciplinary action against him because of his comments—he was simply told not to post any further comments on the blog. The district court held that while Wehrly did allege that he received an insufficient leadership rating in retaliation for his comments, he did not allege a single instance of discriminatory intimidation, ridicule, or insult based on his religion, or that the workplace was permeated with such behavior. The district court dismissed his Title VII and KCRA hostile-work-environment claims.

On appeal, Wehrly's sole challenge to the dismissal order is that the district court erred in not considering all the discriminatory acts alleged in his complaint for a hostile work environment. Wehrly argues that the court wrongly limited its review of his hostile-work-environment claims

by not considering Allstate's actions under Title VII that occurred before December 14, 2017, and actions under the KCRA that occurred before May 19, 2016.[3] But this argument is premised on a basic misunderstanding of the district court's order.

The district court *did* consider all the facts alleged in the complaint including Wehrly's 2015 blog comment and the 2015 performance review and did not apply the statute of limitations when it ruled on Wehrly's hostile-work-environment claim. The district court only addressed statute-of-limitations issues that had been raised by Allstate in response to Wehrly's retaliation claims, not his hostile-work-environment claims.

Wehrly does not challenge any other aspect of the hostile-work-environment ruling, failing to address the court's dismissal for failure to state a claim, and he has effectively waived the issue on appeal. *White Oak Prop. Dev,* 606 F.3d at 854. Even if he had not waived the issue, based on our review of the record and taking the facts in the light most favorable to Wehrly, we agree with the district court that Wehrly failed to plead facts that plausibly establish a hostile work environment based on his religion.

B.      **Summary Judgment**

The district court granted Allstate's motion for summary judgment on Wehrly's remaining claims for retaliation under Title VII for acts that occurred on or after December 14, 2017, and retaliation under the KCRA for acts that occurred on or after May 19, 2016. We review

---

[3] The calculation of these two dates is not in question. In Kentucky, Title VII claims dual-filed with the EEOC and KCHR—like Wehrly's—must be filed within 300 days of the alleged unlawful employment practice. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). KCRA claims are governed by a five-year statute of limitations. *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 798 (Ky. 2000) (citing KRS 413.120(2)).

the district court's summary-judgment decision *de novo*. *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830, 836 (6th Cir.2023). Summary judgment is appropriate where materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. We must "determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (citation omitted). In so deciding, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001).

### 1.      Prima Facie Case of Retaliation

Wehrly's federal Title VII and state KCRA retaliation claims are both evaluated under the federal standard. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014). Since Wehrly is attempting to prove retaliation through circumstantial evidence, his claims are evaluated using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973). Under that framework, Wehrly must show 1) that he engaged in a protected activity, 2) that Allstate knew of his protected conduct, 3) that Allstate took an adverse employment action against him after his protected conduct, and 4) that there was a causal connection between the exercise of Wehrly's protected right and the adverse action. *Montell,* 757 F.3d at 504 (citing *Hamilton v. General Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)). If Wehrly makes out this prima facie case, the burden shifts to Allstate to produce a legitimate, non-

retaliatory reason for its action. If Allstate does so, the burden shifts back to Wehrly to provide evidence that a reasonable jury could conclude that Allstate's reason was pretextual. *Ibid.*

The district court held that Wehrly met his burden of establishing all four elements of a prima facie claim of retaliation. On appeal, Allstate argues that Wehrly failed to establish a causal connection between his protected activity and his termination. To prove causation, Wehrly must show that his protected activity was a "but for" cause of the employer's adverse action against him, "meaning the adverse action would not have occurred absent the employer's desire to retaliate." *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360 (2013)). In finding a causal connection, the district court pointed to the fact that after Wehrly had worked for Allstate for nearly three decades, and he was fired just a few years after his anti-LGBT blog posts and meeting with his manager who cautioned against making further similar comments. Further, Wehrly complained of discriminatory treatment for his vocal Christian views, and Wehrly made repeated claims of religious discrimination between his 2015 blog post and his termination in May 2018. Wehrly first complained of religious discrimination in his written response to his 2015 performance review. He renewed those written complaints in response to his 2016 and 2017 performance reviews and through an HR complaint he filed in March 2018. The district court held that this was enough evidence to meet the causal-connection element of a prima facie retaliation claim. In response, Allstate's argues that Wehrly had similar performance reviews both before and after 2015. Although this may be true, it does not go to the sufficiency of the evidence but to the merits of Wehrly's argument.

## 2.    Pretext

The district court held, and Wehrly does not dispute on appeal, that Allstate presented a legitimate, non-retaliatory reason for terminating his employment—the failure to achieve measurable performance goals. *See Abdulnour v. Campbell Soup Supply Co.*, LLC, 502 F.3d 496, 502 (6th Cir. 2007); *Strickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021). And the district court held that Wehrly did not provide sufficient evidence to raise a genuine issue of material fact that Allstate's reason was pretextual. Pretext can be established by showing that the employer's proffered reasons 1) had no basis in fact, 2) did not actually motivate the employer's action, or 3) were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

On appeal, Wehrly fails to identify record evidence to show that Allstate's decision to fire him was pretextual. Wehrly merely asserts that he had been a long-time employee, had met or exceeded employee expectations for twenty of twenty-nine years and that after he "posted a Christian article on the company blog in response to the company's LGBT positions," his "supervisors began a calculated offensive in retaliation against him." [Appellee Brief at 14] He states that he received his first unacceptable notifications for behavior and performance issues in 2015 and argues that he was tasked with unreasonable performance goals and subjected to overly aggressive meetings with supervisors and that his yearly bonuses were subjected to "fines" because of his insufficient performance ratings.

But Wehrly's assertion is contrary to the record. He fails to address evidence that he had been underperforming dating back to 2013, years before the 2015 blog incident and his 2018 termination. He does not grapple with the district court's conclusion that "[t]he evidence

overwhelmingly show[ed] that Wehrly had been underperforming for years before his termination." Further, as the district court noted, Wehrly points to no evidence to dispute Allstate's performance-rating calculations. This includes that, after the blog posts, "Wehrly's business ranking for the 2015 period was 18 of 26 amongst his regional peers," and that at the time of his termination, Wehrly's "various production levels were at either the lowest or next to lowest levels as compared to his peers in the region." And even discounting the 2015 evaluation, there is no evidence that Allstate's performance evaluations for the preceding or succeeding years were based on anything other than Wehrly's performance.[4] In fact, as the district court noted, the 2015 performance review was not the first time Wehrly had complained of unfair and inequitable treatment—he had done so previously in 2014. But that complaint was not tied to any alleged religious discrimination, a point that the district court believed "undercut[] Wehrly's argument that Allstate's reasons [the many examples of underperformance] were merely" a pretext for religious discrimination. Wehrly does not confront this reason on appeal. In short, Wehrly fails to show that the district court erred by finding that no genuine issue of material fact remained as to whether Allstate's actions were pretextual.

Accordingly, we **AFFIRM** the district court.

---

[4] The 2015 performance review and subsequent loss of bonus money from that negative performance review do not constitute adverse actions for Wehrly's retaliation claims because the district court concluded that the relevant statutes of limitations limited those claims for acts that occurred on or after December 14, 2017, for the Title VII claim, and for acts that occurred on or after May 19, 2016, for the KCRA claim.